UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH ZELLER,

        Plaintiff,

Case No. 13-13729

Honorable John Corbett O'Meara

v.

CANADIAN NATIONAL RAILWAY
COMPANY, *et. al.*,

        Defendants.

        _____/

**ORDER DENYING DEFENDANT CNR'S MOTION TO DISMISS AND
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter came before the court on the following six motions: defendant Stellar Distribution Services' April 15, 2015 motion for summary judgment (Docket #71); defendant CN U.S. Customs Brokerage Services' April 15, 2015 motion for summary judgment (#74); defendant Canadian National Railroad's April 15, 2015 motion to dismiss (#92); defendant Grand Trunk Western Railroad's April 27, 2015 motion for summary judgment (#103); defendant Canadian National Railroad's April 27, 2015 motion for summary judgment (#108); and defendant Illinois Central Railroad's April 27, 2015 motion for summary judgment (#113). The issues were fully briefed by plaintiff Zeller's responses and Defendants' reply briefs. Oral argument was heard June 25, 2015.

**BACKGROUND FACTS**[1]

---

[1] The background facts are taken from Plaintiff's responses to Defendants' motions for summary judgment.

In March 2011, plaintiff Sarah Zeller began working as an import/export analyst for defendant Canadian National Customs Brokerage Services ("CNCB"), a wholly-owned subsidiary of defendant Canadian National Railroad Company ("CNR"). She worked in a trailer shared with employees of defendant Stellar Distribution Services ("Stellar") in the Port Huron, Michigan rail yard owned by defendant Grand Trunk Western Railroad ("GTW"). Because the trailer did not have a restroom, Plaintiff had to walk to the yard office building owned by GTW to use its restroom.

Plaintiff alleges that in 2012 she became the target of "severe, threatening, and intimidating acts of sexual harassment." The harassment, which occurred in the rail yard, started with comments like "she has a nice ass," "I'd hit that," "I wouldn't mind fucking you," and offers of a threesome by male employees and/or agents of the defendants.

Plaintiff claims the verbal comments escalated to a physical assault by a male employee near the women's restroom around May 1, 2012. She claims she was pushed against the wall and fondled by a male employee. When she started to cry, he covered her mouth and told her "to shut up[,] bitch." Plaintiff initially did not report the assault out of fear, embarrassment and intimidation.

In June 2012, a note reading, "I want to fuck you," along with a used condom, was left on her car in the GTW rail yard. Although she did not keep the note, Plaintiff told Roger Wilson, her supervisor, in June 2012, generally, about the sexual harassment she was experiencing at work. Wilson, while he admits he was made award of the harassment at that time, failed to report it to anyone in human resources. Another note containing an explicit message was left on Plaintiff's car in July 2012: "you have great tits, I can't wait to suck them."

2

On September 1, 2012, Plaintiff became very upset at work after going to the restroom and finding that the lock on the door was not working properly. Plaintiff talked to Jeff Caplinger, a supervisor at Steller, and he conveyed that to Roger Wilson. Wilson, in turn, reported it to his manager, Alice Peres da Silva, a senior manager employed by CNR. Peres da Silva then contacted Susan Ward, a senior manager of CNR's human resources department in Montreal. Ward subsequently contacted senior HR director Alan Rothwell, an employee of defendant Illinois Central ("ICRR"), for assignment of an investigation of Plaintiff's sex harassment complaints. Rothwell assigned the investigation to HR manager Duane Spears, who in turn assigned the matter to Veronica Loewy. Loewy is a HR associate also employed by ICRR, located in Homewood, Illinois.

In September 2012, over a period of eight days, Loewy investigated, via phone, Plaintiff's complaints. On September 18, Loewy spoke via phone to Josie Evans, an employee of defendant Stellar. Evans told Loewy that she too experienced guys whistling at her and making comments like "you look sexy today" and that this would occur when Evans would go to the operations building to use the restroom.

Ultimately, Loewy emailed Ward, reporting that she had "completed the investigation and was unable to substantiate any policy violation." On October 1, 2012, Loewy followed up with Ward, and a letter was sent to Plaintiff indicating that in response to her complaints, "[t]he Company took immediate action to look into the matter . . . [and] we were unable to conclude that any violation of our Prohibited Harassment, Discrimination and Anti-Retaliation Policy has occurred. Illinois Central Railroad takes complaints of harassment very seriously."

During the first or second week of October, Plaintiff found another sexually explicit note saying "I want to fuck you," along with a condom on her car in the GTW parking lot. She did not

keep the note. On October 24, 2012, while Plaintiff was speaking with Roger Wilson, she saw another note and condom on her vehicle in the parking lot. Wilson retrieved the note, which read, "why do you ignore me you are such a bitch but I still want to fuck you your boss does to [*sic*] but me first." That same day, Plaintiff discovered that paper, pen and a personal picture of her and her two sons were missing from her desk.

CNR police were contacted by director Rothwell to investigate the incidents. On November 8, 2012, CNR human resources received a letter from Plaintiff's attorney, demanding that CNR take immediate steps to protect Plaintiff's safety. On November 17, 2012, Jennifer Sexton, Plaintiff's co-worker, discovered a note that had been placed in the screen of Plaintiff's work trailer. The note, written on a CN form, read, "Camera Shes Mine." Plaintiff left work shortly after receiving the note and suffered a breakdown the next day for which she was hospitalized for approximately two weeks. Plaintiff was placed on leave from November 17, 2012, and did not return to work. She resigned August 22, 2013. Since these events, Plaintiff has been hospitalized about ten times for severe, chronic post-traumatic stress disorder and suicidal ideation.

Plaintiff Sarah Zeller, along with her husband Scott, filed this suit August 30, 2013. Plaintiffs' First Amended Complaint was filed February 27, 2015, alleging violations of Title VII in Count I, violations of the Federal Employers Liability Act ("FELA") in Count II, common law negligence in Count III, and loss of consortium in Count IV. The court recently dismissed the state law claims in order to avoid jury confusion, as the parties to this action are not diverse in citizenship. Sarah Zeller remains as the sole plaintiff in this action.

## **LAW AND ANALYSIS**

**Defendant Stellar Distribution Services' April 15, 2015 motion for summary judgment**

In her combined response to defendants Stellar's and CNCB's motions for summary judgment, Plaintiff conceded the motion as to defendant Stellar with respect to Count II; therefore, only Count I, alleging violations of Title VII, remains against this defendant.

Defendant Stellar claims it is entitled to summary judgment on Count I for the following reasons: 1) Plaintiff failed to exhaust her administrative remedies; 2) Stellar did not employ Plaintiff; 3) Stellar did not know of the alleged harassment; and 4) when it did learn of it, it took prompt, remedial action.

Plaintiff failed to name Stellar in her charge before the EEOC; therefore, Stellar had no knowledge that Plaintiff intended to accuse it of violating Title VII. Although Plaintiff put Stellar's name on the intake questionnaire, the court finds this inadequate to inform Stellar of an action against it. In cases like this, in which a plaintiff lists a defendant on the intake questionnaire but fails to name it in the charge or request for relief against that defendant, courts continue to hold that the plaintiff failed to exhaust administrative remedies. Federal Express Corp. v. Holowecki, 552 U.S. 389, 404 (2008); Cairns v. UBS Fin. Servs., Inc., 2008 WL 4852429, *3 (D. Colo. Nov. 7, 2008); Muldrew v. Joseph McCormick Const. Co., Inc., 2014 WL 3890336, at *4-5 (W.D. Pa Aug. 8, 2014).

Even if defendant Stellar had been named in the EEOC charge, Stellar was not Plaintiff's employer. Although Plaintiff argues that Stellar was her employer under theories of single employer, agency, or joint employer, Plaintiff's arguments are without merit. Furthermore, there is no evidence to suggest defendant Stellar knew or should have know of the alleged sex harassment. In fact, it was an employee of Stellar who first alerted Plaintiff's supervisor of a potential problem; and it was employees of Stellar who took it upon themselves to escort Plaintiff to the restroom after

5

she made her concerns known to them. For these reasons, defendant Stellar is entitled to summary judgment.

**Defendant CNCB's April 15, 2015 motion for summary judgment**

In her combined response to defendants Stellar's and CNCB's motions for summary judgment, Plaintiff conceded the motion also as to defendant CNCB with respect to Count II. Therefore, only Count I, alleging violations of Title VII remains against this defendant.

Defendant CNCB claims it is entitled to summary judgment on Count I for the following reasons: 1) it does not employ the requisite minimum 15 employees in order for Plaintiff to sustain a claim under Title VII; 2) Plaintiff cannot establish that CNCB knew or should have known of the alleged harassment; and 3) after it was brought to CNCB's attention, the company took prompt and appropriate remedial measures to correct the situation.

Title VII applies only to employers with "fifteen or more employees." 42 U.S.C. § 2000e(b). Moreover, in this case Plaintiff must establish CNCB employed 15 or more individuals "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," that is, 2012 and 2013. Id. This threshold number is an element of a plaintiff's claim. Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). Defendant CNCB does not the meet the requisite amount. As reflected in Roger Wilson's declaration, the highest number of employees CNCB employed for twenty or more weeks in 2012 was five. In 2013 it was eleven.

Plaintiff seeks to aggregate the number of employees of various defendants in order to meet the amount under different theories, including the theory of joint employers. However, aggregation of joint employees to meet the Title VII numerosity requirement is permissible only when one joint employer exercises control over the employees of the other joint employer. Sanford v. Main St. Baptist Church Manor, Inc. 327 F. App'x 587, 594 (6th Cir. 2009). To determine whether the requirement is met, the number of employees employed by CNCB alone is added to those jointly

employed by CNCB and another entity. However, Plaintiff has been unable to establish that CNCB jointly employs workers of Stellar or any other defendant in this case.

Even if CNCB met the numerosity requirement of Title VII, Plaintiff's claims against CNCB fail on the merits as well. Employers are not strictly liable for sexual harassment by a non-supervisor. Fenton v. HiSAN, Inc., 174 F.3d 827, 829 (6th Cir. 1999). Instead, a plaintiff must prove that the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. See Mullins, 291 Fed. App'x at 747. Although reasonable minds may differ regarding the severity and pervasiveness of Plaintiff's claims of sexual harassment in this case, there can be no question that CNCB took prompt and appropriate remedial action to correct the situation. A response is adequate if it is reasonably calculated to end the harassment.

During her employment, Zeller reported that she had been approached by someone she could not identify when she went to the women's restroom in May 2102.[2] However, she did not tell anyone in a supervisory position about what happened until early September 2012. And at that time, Plaintiff did not report that she was physically touched by the unidentified individual. In Myers v. Office Deport, Inc., 2007 WL 2413087 (E.D. Mich. Aug. 21, 2007), this court held that where a plaintiff did not report a co-worker grabbing him and trying to kiss him in a restroom "for many months," the defendant lacked notice and was not liable for inaction.

In this case, once Plaintiff did report the altercation, remedial measures were taken. CNCB and Stellar employees assisted her by escorting her to the restroom, and CNCB modified work

---

[2]Plaintiffs' pleadings now indicate that there was a physical element to this encounter, as reiterated in the Background Facts. However, during the entirety of Plaintiff's employment, her supervisors were not informed of any touching by the unknown assailant. None of the defendants had any knowledge of a physical altercation in May 2012 until after this lawsuit was filed.

schedules for Plaintiff and others to ensure that she did not work alone. After Plaintiff raised the additional allegations about notes and condoms being left at her car, CNCB checked on her well-being at least twice, outlined for her evidence preservation protocol in case of future incidents to facilitate investigation, involved human resources and the GTW police, allowed Plaintiff's husband to install a surveillance camera at the location of Plaintiff's choosing, and shortly thereafter, initiated installation of new locks on the restroom and security cameras[3] in the parking lot as Plaintiff had requested. When another note was found in November 2012, GTW police arrived promptly to investigate and collect evidence. Plaintiff, however, took an extended leave of absence and ultimately resigned. Under these circumstances, no reasonable jury could find that defendant CNCB's actions reflected indifference or unreasonableness. Instead, the company's actions exhibit prompt and appropriate remedial action to correct circumstances that would lead to further sexual harassment. Therefore, defendant CNCB is entitled to summary judgment under her Title VII claims.

**Defendant Grand Trunk Western's April 27, 2015 motion for summary judgment**

In the combined response to GTW's and ICRR's motions for summary judgment, Plaintiff conceded the motion with respect to claims against GTW under FELA. Therefore, only Count I, which alleges violations of Title VII, remains against this defendant.

Defendant GTW claims it is entitled to summary judgment on Plaintiff's claims under Title VII for the following reasons: 1) she did not exhaust her administrative remedies, 2) GTW is not her employer for purposes of Title VII, and 3) GTW's actions did not violate Title VII.

---

[3] Security cameras, at the cost of $16,000.00, were ordered in November 2012, just two months after Plaintiff told her supervisor of the incident near the women's restroom; and they were installed in January 2013.

As with other defendants in this case, Plaintiff did not name GTW in her EEOC charge. Therefore, defendant GTW had no knowledge that Plaintiff intended to accuse it of violating Title VII. Unlike with defendant Stellar, however, Plaintiff did not name GTW even on the intake questionnaire. Accordingly, she failed to exhaust administrative remedies with respect to defendant GTW.

Even if she had named defendant GTW in the EEOC charge, however, GTW was not her employer, defendant CNCB was. Plaintiff argues that GTW was her employer based on the fact that Duane Spears, an ICRR employee, provided human resources services to GTW and that therefore GTW and CNCB are a single employer/integrated enterprise or joint employer for Title VII purposes. However, the fact that Spears performed services for GTW does not mean that either he or GTW made operational or employment decisions controlling Plaintiff's employer, CNCB. Plaintiff has not shown an integrated enterprise between GTW and CNCB or that GTW made any employment decisions relating to Plaintiff. Also, there is no evidence of a joint employment situation in this case because, again, GTW made no employment decisions regarding Plaintiff. The only relationship between GTW and Plaintiff in his case is that GTW owned the rail yard on which several buildings were situated, including one trailer in which Plaintiff worked and one building in which she used the restroom. Therefore, defendant GTW is entitled to summary judgment on Plaintiff's Title VII claims.

**Defendant Illinois Central Railroad's April 27, 2015 motion for summary judgment**

In the combined response to defendants GTW and ICRR's motions for summary judgment, Plaintiff again conceded the motions as to the FELA claim. The only remaining claim against defendant ICRR is Count I for violations of Title VII.

As to Plaintiff's Title VII cause of action, defendant ICRR claims it is entitled to summary judgment for the following reasons: 1) the claim is untimely, 2) Plaintiff failed to exhaust administrative remedies, 3) ICRR is not Plaintiff's employer, 4) ICRR did not know and should not have known of the alleged harassment, and 5) upon notice of the alleged harassment, ICRR took prompt, appropriate remedial steps to avoid further harassment.

Plaintiff did not respond to defendant ICRR's argument that the amended complaint adding it as a defendant does not relate back to the original date of the filing of the complaint under Rule 15 of the Federal Rules of Civil Procedure. The Title VII complaint against this defendant was filed outside the required 90-day time limit contained in the right to sue letter and is untimely. See Schejbal v. Earthgrains Co., 1999 WL 819573 at *2 (W.D. Mo. 1999).

Even if the claim were not untimely, the court would find that, again, Plaintiff failed to exhaust administrative remedies. Defendant ICRR, like defendant GTW, was not named even on the intake questionnaire. Plaintiff argues that ICRR had notification that it was being sued because some defendants are represented by the same attorneys, and since those attorneys had notice, all of the defendant companies they represent had notice of the suit. However, this is insufficient notice under Title VII. Furthermore, because Plaintiffs have been represented by and advised by legal counsel since Plaintiff left her position with CNCB in November 2012, it is not necessary to construe her EEOC charge as liberally as if she were not represented by counsel.

Again, there is insufficient evidence to support a finding under theories of agency or joint employers that defendant ICRR was Plaintiff's employer. Although employees of ICRR helped with and in some cases conducted aspects of the investigation into the alleged incident at the restroom,

those activities fail to show the requisite commonalities to prove that any of the defendants are alter egos of another.

As with the other defendants, Plaintiff has failed to show that defendant ICRR knew or should have known of the alleged harassment. Plaintiff did not report the May 2012 incident to Roger Wilson until September 2012. When notes were left at her car, in two cases with a condom left nearby, she did not keep the notes nor did she inform her supervisors of these additional acts until she was asked about them. When they were notified, they took prompt, remedial action to rectify the situation as analyzed above.

**Defendant CNR's April 15, 2015 motion to dismiss for lack of personal jurisdiction**

Defendant CNR, a Canadian corporation, seeks dismissal based on lack of personal jurisdiction. Plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. Bird v. Parson, 289 F.3d 865 (6th Cir. 2002). The allegations of the plaintiff's complaint must be construed as true; however, if contradicted by the defendant's evidence, the plaintiff must produce admissible evidence of a *prima facie* case establishing jurisdiction. Dorsey v. American Golf Corp., 98 F. Supp. 2d 812 (E.D. Mich. 2000).

Determining whether a court has personal jurisdiction over a defendant is a two-step process. Under Rule 4(k) of the Federal Rules of Civil Procedure, the court must first determine if the actions of the defendant fall within one of Michigan's long arm statutes, in this case Mich. Comp. Laws Ann. §§ 600.711 or 600.715. Assuming the defendant falls within one of them, the court must next decide whether exercising personal jurisdiction will comport with due process. International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Michigan's general jurisdiction statute for corporations provides the following:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state;
>
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745; or
>
> (3) The carrying on of a continuous and systematic part of its general business within the state.

Mich. Comp. Laws Ann. § 600.711.

In this case there exists no basis for exercising general jurisdiction over defendant CNR. Defendant is not incorporated in Michigan and has not consented to personal jurisdiction in this state. Moreover, defendant CNR does not carry on a continuous and systematic part of its general business within the state.

Michigan's limited personal jurisdiction statute for corporations provides the following:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create the following relationships:
>
> (1) The transaction of any business within the state; or
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; or
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within this state; or
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

>    (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws Ann. § 600.715.

Under § 600.715(3), one of the relationships that confers jurisdiction is "ownership, use, or possession of real property situated within this state." Defendant CNR admits it owns real property in Port Huron, Michigan, but not the property upon which Plaintiff worked and the alleged incidents of sexual harassment occurred. Even if the law were to require that the ownership be of the same real property upon which the incidents occurred, jurisdiction is conferred by defendant CNR's "use" of GTW's real property. As for satisfying the requirements of International Shoe, defendant CNR has purposefully availed itself of the privilege of doing business in Michigan by using GTW's property to end its train trips. CNR employees are on those trains coming into Michigan and return to Canada by train or taxi cab. Therefore, the court will deny defendant CNR's motion to dismiss based on lack of personal jurisdiction.

**Defendant CNR's April 27, 2015 motion for summary judgment**

Defendant CNR's motion for summary judgment asserts the same arguments advanced by other defendants regarding Plaintiff's Title VII claim: Plaintiff failed to exhaust administrative remedies, CNR is not Plaintiff's employer, and Plaintiff's claim fails on the merits.

A plaintiff must exhaust administrative remedies by filing a charge with the EEOC which sufficiently identifies the parties prior to bringing a Title VII lawsuit. Williams v. Northwest Airlines, Inc., 53 Fed. App'x. 350, 351 (6th Cir. 2002). The suit may be maintained only against parties named in the EEOC charge. Knafel v. Pepsi-Cola Bottlers of Akron, Inc., 899 F.2d 1473 (6th Cir. 1990). The only exception is if there is a clear identity of interest between the unnamed party and the party named in the EEOC charge to the degree that the two are alter egos. Id.

14

Although the charge failed to name CN Rail*way* and instead named CN Rail*road*, Plaintiff again asserts that CNR and CNCB are integrated enterprises. In order to determine whether two companies constitute a single employer, courts examine four factors: 1) interrelation of operations, *i.e.* common offices, common record keeping, shared bank accounts and equipment; 2) common management and common boards of directors; 3) centralized control of labor relations and personnel; and 4) common ownership and financial control. Swallows v. Barnes & Nobel Book Stores, Inc., 128 F.3d 990, 993 (6th Cir. 1997). In this case Plaintiff is not able to establish that CNR and CNCB are integrated enterprises, as the two maintain separate offices, record keeping, and bank accounts. The day-to-day management and control is separate from and not controlled by CNR. The only connection between the two companies in this case is that CNCB asked CNR to assist it in finding someone to investigate Plaintiff's concerns on behalf of CNCB because it temporarily had no human resources personnel. There is some overlap on the boards of directors; however, CNR does not control CNCB's labor relations and personnel.

Likewise, the two companies are not joint employers. A party who provides only human resources services is not a joint employer. Adams v. Vallega's Prof. Home Cleaning, Inc., 2012 WL 5386028 at *11 (N.D. Ohio 2012). In this case, CNR provided only a referral for CNCB.

For the reasons set forth in portions dealing with other defendants, Plaintiff's Title VII claims must fail on the merits as well. Even if the court were to assume the alleged harassment was severe or pervasive, there is no evidence to show that defendant CNR failed to take prompt and appropriate remedial action.

Unlike with the other defendant in this case, plaintiff Zeller has not conceded that defendant CNR is not liable under FELA. FELA, however, applies only to employees of railroads engaged in interstate commerce. 45 U.S.C. § 51. In this case Plaintiff is not a railroad employee.

The United States Supreme Court has described three ways a non-railroad employee could be considered such an employee under FELA--a borrowed servant, dual servant, or sub servant of a servant of a railroad; however, none applies to plaintiff Zeller. See Kelley v. Southern Pac. Co., 419 U.S. 318, 324 (1974). Both "borrowed servant" and "dual servant" theories turn on the issue of control. A plaintiff must show that the railroad had a significant supervisory role over the means and manner of a plaintiff's job performance. Id. at 325-26. Control or right to control is also required to establish that the plaintiff's employer is a "servant" of the railroad. Id. In this case Plaintiff herself has testified that she is unaware of anyone other than CNCB supervising or controlling her work activities. Zeller dep. at 253-55. She was not paid by CNR, and it was CNCB that handled discipline and discharge of its employees. Therefore, just as in the discussion under Title VII, CNCB is not the alter ego of CNR.

Even if CNR were deemed Plaintiff's employer under FELA, Plaintiff's cause of action under the statute is for negligence. The Act does not impose absolute liability, however. Shenker v. Baltimore & Ohio R.R. Co., 374 U.S. 1 (1963). Instead, a plaintiff must be able to establish the following elements of negligence: 1) the employer was negligent, 2) the negligence caused the plaintiff's injuries, and 3) the plaintiff's injuries are compensable under the Act. Moreover, a plaintiff must establish that his or her injuries were reasonably foreseeable to the employer. Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 117 (1963). The standard of care in a FELA action is to exercise reasonable care to provide a reasonably safe workplace. Atlantic Coast Line R.R. Co.

v. Dixon, 189 F.2d 525, 526-27 (5th Cir. 1951). In the absence of notice, the railroad cannot be held liable under the Act. Kaminski v. Chicago River and Indiana R. R. Co., 200 F.2d 1 (7th Cir. 1952); see also Miller v. Cincinnati, N.O. & T.P. Ry Co., 317 F.2d 693 (6th Cir. 1963).

In this case, as discussed above under Plaintiff's Title VII claims against this and other defendants, Plaintiff waited four months to tell her supervisor about the incident near the women's restroom. And again, prompt and appropriate remedial action was taken after her supervisor was informed about what happened. Under these circumstances, defendant CNR cannot be found negligent under FELA and is entitled to summary judgment.

## ORDER

It is hereby **ORDERED** that defendant Stellar Distribution Services' April 15, 2015 motion for summary judgment (Docket #71) is **GRANTED.**

It is further **ORDERED** that defendant CN U.S. Customs Brokerage Services' April 15, 2015 motion for summary judgment (#74) is **GRANTED.**

It is further **ORDERED** that defendant Canadian National Railroad's April 15, 2015 motion to dismiss (#92) is **DENIED.**

It is further **ORDERED** that defendant Grand Trunk Western Railroad's April 27, 2015 motion for summary judgment (#103) is **GRANTED.**

It is further **ORDERED** that defendant Canadian National Railroad's April 27, 2015 motion for summary judgment (#108) is **GRANTED.**

It is further **ORDERED** that Illinois Central Railroad's April 27 2015 motion for summary judgment (#113) is **GRANTED.**

s/John Corbett O'Meara  
United States District Judge

Date:  June 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, June 30, 2015, using the ECF system.

s/William Barkholz  
Case Manager